UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROMANO                                    CIVIL ACTION

VERSUS                                    NO: 12-469

GREENSTEIN                                SECTION: "J"(5)

**ORDER AND REASONS**

Before the Court are the defendant's motion to dismiss (Rec.
Doc. 9) and the plaintiff's opposition to same (Rec. Doc. 13); as
well as the plaintiff's motion for summary judgment (Rec. Doc.
11) and the defendant's opposition to same (Rec. Doc. 14).  The
motions are before the Court on supporting memoranda and without
oral argument.  Having considered the motions and legal
memoranda, the record, and the applicable law, the Court now
issues its ruling.


**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Tiffany L. Romano brings this lawsuit against Bruce D.
Greenstein in his official capacity as Secretary of the Louisiana
Department of Health and Hospitals ("DHH"), which is the agency

1

designated by the State of Louisiana to administer the federal Medicaid program for the State.[1]  Romano sues under Title 42 U.S.C. § 1983, the Declaratory Judgment Act, the federal Medicaid Act, and the United States Constitution for injunctive relief from decisions, procedures, and policies of DHH that she alleges have illegally terminated her federal Medicaid assistance. Romano seeks both the reversal of DHH's decision to terminate her Medicaid benefits and changes to DHH's standards for evaluating disability status and for issuance of notices of decision regarding such status.  Romano's complaint alleges the following facts.

Romano's impairments include severe myofascial pain, frequent migraine headaches, weaknesses in her grip and lower extremities, and frequent gastrointestinal problems.  During or before December 2010, DHH determined that Romano qualified for Medicaid assistance.  Subsequently, on August 15, 2011, DHH

---

[1] Hereinafter, the Court refers to the defendant as "DHH."  The Court recognizes that the named defendant is Bruce D. Greenstein, but because the suit is against him in his official capacity, the Court refers to the defendant as "DHH" for the sake of convenience.  See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) (suit against a state official is his official capacity is generally suit against the State itself).  That the Court refers to the defendant as "DHH" is not meant to imply that the suit against Greenstein in his official capacity cannot invoke Title 42 U.S.C. § 1983.  See id. n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (quotation marks omitted).

issued a decision that Romano was no longer eligible for
Medicaid.  Upon her appeal of DHH's decision, a state
administrative law judge ("ALJ") reversed the termination.  DHH
adopted the decision.  Thereafter, on November 14, 2011, DHH
again proposed to terminate Romano's Medicaid benefits.  She
again appealed and received a hearing before an ALJ on January
10, 2012; over 600 pages of medical records were in the record.
The ALJ affirmed DHH's denial of Medicaid, referring to a
standard under which DHH uses the most recent two years of
medical records to determine Romano's current condition.  The ALJ
concluded that Romano's medical condition had improved based on a
decreasing number of medical appointments in the previous two
years under consideration.

Romano alleges in her complaint that DHH's procedures
violate federal Medicaid law.  She asserts that the two-years-of-
medical-records rule is one such violation.  She argues that many
aspects of the decision in her case are not properly supported.
She avers that DHH used incorrect disability standards.  Her
first cause of action alleges that DHH violates the Social
Security Act requirement that Louisiana provide Medicaid to all
eligible individuals.  Her second cause of action alleges that by
failing to provide notices of its decisions that provide the

reasons for the decisions, DHH violates the Medicaid fair hearing requirements.  Romano's third cause of action alleges that by terminating Medicaid under improper standards and with denial notices that do not give DHH's reasoning, DHH has terminated Romano's property interest in Medicaid benefits without due process of law.  Romano prays for a preliminary injunction continuing Medicaid benefits, declaratory relief, the reversal of DHH's termination of Medicaid, a permanent injunction of DHH from violating federal Medicaid law, and reasonable attorney's fees and costs.

## THE PARTIES' ARGUMENTS

### A.  Motion to Dismiss

DHH argues that Romano fails to state a claim upon which relief can be granted and that subject matter jurisdiction is absent.  It argues that Romano has no private right of action under the statutory authority she invokes.  DHH argues that the Court lacks subject matter jurisdiction because Romano has an available adequate administrative remedy at law through the state judicial process of appealing the ALJ's decision.  It argues that Romano is improperly requesting that the Court exercise subject matter jurisdiction and perform the state court's judicial review

4

function.   Relatedly, DHH argues that Romano's failure to pursue the state level judicial review process of the ALJ's decision equates to a failure to exhaust administrative remedies.   In the alternative, DHH requests that the Court exercise abstention because the Centers for Medicare and Medicaid Services ("CMS") has delegated administration of the Louisiana Medicaid program to DHH, which provides an administrative appeal process.

Romano argues that state law does not require her to pursue an action in state court instead of or in advance of bringing her claim in federal court.   She argues that the existence of judicial review in state court does not preclude her § 1983 claim brought in federal court.     She asserts that abstention does not apply in this case.   Romano argues that the Medicaid provisions she relies upon are privately enforceable by a § 1983 lawsuit.

**B.   Motion for Summary Judgment**

Romano argues that summary judgment is appropriate in this case because it turns on the legal question of whether the state agency, DHH, is complying with the federal standard for determining whether Romano's disability has ceased.   The underpinning of her claim is that DHH employed the wrong analysis and excluded federally required evidence in evaluating whether

5

her disability has continued.  First, she argues that DHH improperly used a five-step sequential evaluation applicable to *initial* disability determinations, rather than the appropriate seven-step evaluation that should be used to determine *continuing* disability.  Second, she argues that DHH violated federal regulations by not considering all available evidence in the case file, but rather executing DHH's policy of only considering the prior two years of medical evidence.  Third, she argues that DHH did not consider evidence of changes in her symptoms, signs, and/or laboratory findings associated with her impairments, as is required under federal law.  As a result, Romano requests that the Court (1) order reinstatement of her Medicaid and (2) order that DHH may not terminate Medicaid in violation of federal law, as set forth above.

DHH, in its opposition, mainly re-urges arguments set forth in its motion to dismiss.  DHH asserts that it provided Romano with disability-based Medicaid benefits for approximately four years after her federal Social Security Disability benefits ceased and that it continued coverage until she ceased to meet the disability criteria.  It argues that the law does not require it to follow the seven-step sequential evaluation process referenced by Romano.  DHH argues that the delegation of a

hearing and review is made to the state-level administrator and state courts.

## DISCUSSION

**A.  Motion to Dismiss**

**1.  Legal Standard**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005).  The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss.  Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011).  The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6).  United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547

(2007)).  A claim is facially plausible when the plaintiff pleads
facts that allow the court to "draw the reasonable inference that
the defendant is liable for the misconduct alleged."  <u>Id.</u>  A
court must accept all well-pleaded facts as true and must draw
all reasonable inferences in favor of the plaintiff.  <u>Lormand v.
U.S. Unwired, Inc.</u>, 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker
v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not,
however, bound to accept as true legal conclusions couched as
factual allegations.  <u>Iqbal</u>, 556 U.S. at 678.

### 2.  Subject Matter Jurisdiction

Federal law requires the state to provide a fair hearing to
Medicaid claimants whose claims have been denied.  42 U.S.C. §
1396a(a)(3).  The Louisiana DHH avers that it has complied with
this federal requirement by providing claimants with hearings
before ALJs.  The Louisiana Legislature has provided for appeals
from ALJ decisions to state district courts.  <u>See</u> LA. REV. STAT. §
49:964(A)(1) (Louisiana Administrative Procedure Act ("LAPA")
providing for judicial review of final agency decisions or
orders).  The cited state statute is the LAPA provision for
appeals of ALJ decisions, and it does not appear to be DHH's
creation of an appellate review process of Medicaid decisions.
DHH cites no applicable state law mandating an appeal to a state

district court of an ALJ's decision concerning a DHH Medicaid
determination.  It cites its state Medicaid plan, attached as an
exhibit to the motion to dismiss, but that document does not
state that an appeal must be made to state court.[2]  Furthermore,
the LAPA expressly states that it does not limit the scope of
judicial review available under "other means of review, redress,
relief, or trial de novo provided by law."  Id.  Because there is
nothing in state or federal law precluding a Medicaid claimant in
Louisiana who has exhausted his administrative remedy by
appealing to a state ALJ from seeking review in federal court,
the Court finds that Romano's decision not to seek judicial
review in state court of the ALJ's adverse decision does not
prevent this Court from exercising jurisdiction.

    DHH's argument—that Romano's "failure to exhaust" by not
filing suit in state court precludes this Court's subject matter
jurisdiction—seems to imply that Congress has mandated the claims
review procedure implemented by DHH under its Medicaid plan.  The
argument appears to be as follows:  (1) Congress requires that
Louisiana provide a fair hearing process in its state Medicaid

---

[2] The state plan simply states that "[t]he Appeals Bureau shall advise
the aggrieved of any rights he or she may have and of procedures required to
pursue civil remedies under Judicial Review subsequent to a negative decision
by the Bureau.").  Rec. Doc. 9-1, at 4.

plan[3]; (2) Louisiana has complied with this requirement by providing a fair hearing process via its Medicaid plan and the statutorily created judicial review procedure; and therefore (3) as a matter of federal law, Romano is required to exhaust available state procedure before coming to federal court.  DHH begs the question because, even assuming the existence of a federally-compliant state *plan* providing for a process of review that must be exhausted prior to a suit in federal court, an important aspect of Romano's claim is that DHH *is not complying* with the congressionally mandated fair hearing process.[4]  DHH cannot merely assert that its state Medicaid plan review procedure complies with federal law in an attempt to preclude a plaintiff from coming to federal court to seek to demonstrate how that plan, in actual practice applied to the plaintiff's case, is not federally compliant.

Moreover, DHH's analogy to the exhaustion requirement that exists in the context of federal agency decisions has little relevance to this case, which involves the decision of a state

_____

[3] See 42 U.S.C. § 1396a(a)(3) ("A State plan for medical assistance must provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.").

[4] See Rec. Doc. 1, at 14, ¶ 85 (asserting that because of the procedures used in Romano's case, she "was not granted an opportunity for a fair hearing before the State agency *as required by 42 U.S.C. § 1396(a)(3) and the implementing regulations*") (emphasis added).

10

agency.  DHH cites federal law establishing a review process
whereby the decision of the Social Security Administration must
be administratively appealed.[5]  However, no federal agency
decision is involved in this case.  Even if an administrative
exhaustion requirement exists, Romano has completed it.  The
complaint alleges that Romano appealed DHH's position to a state
ALJ, who affirmed DHH's denial of disability.  Rec. Doc. 1, at 5,
¶ 27.  Therefore, contrary to DHH's assertion, Romano properly
invokes federal question jurisdiction through alleging that
Greenstein, in his official capacity as Secretary of the DHH, is
depriving her of federal rights under color of state law in
violation of Title 42 U.S.C. § 1983.  Put simply, exhaustion of
*administrative* remedies does not require suing in a state *court*.

        Nor is the Court persuaded by DHH's argument that Romano is
not entitled to the permanent injunction she seeks because there
is another available adequate legal remedy—judicial review in
state court.[6]  First, Romano need not have filed suit in state
court prior to bringing her § 1983 claim in federal court.  See

_____

        [5] See 42 U.S.C. § 1395ii (Medicare provision incorporating § 405(h)); 42
U.S.C. § 405(h) (no decision of the Commissioner of Social Security may be
reviewed "except as herein provided"); 42 U.S.C. § 405(g) (provision regarding
judicial review).

        [6] DHH also argues that the state-level judicial review process affords
Romano greater rights than injunctive relief by permitting a stay order to be
issued without a contradictory hearing and by permitting a reviewing state
district court to conduct a *de novo* review of the administrative record.

Curtis v. Taylor, 648 F.2d 946, 949 (5th Cir. 1980) (where state asserted that the judicial review of agency action provided by a state administrative procedure act was an adequate remedy, the court stated, "If this is an argument that state judicial remedies must first be exhausted, the argument has been repeatedly rejected by the Supreme Court").  Second, the loss of Medicaid can pose irreparable injury,[7] which is a basis for showing no adequate remedy at law.[8]  Romano has carried her burden of proving that the Court has subject matter jurisdiction.

### 3.  Private Right of Action

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws."  Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697, 702 (5th Cir. 2007) (quotation marks omitted).  To seek redress under § 1983, the plaintiff must assert the violation of a federal right.  Id.  A claim based on the violation of a federal statute is actionable under § 1983 only when the statute creates rights, privileges, or immunities in a particular plaintiff, which requires a determination of whether Congress intended to confer individual

---

[7] Mass. Ass'n of Older Americans v. Sharp, 700 F.2d 749, 753 (1st Cir. 1983); Caldwell v. Blum, 621 F.2d 491, 498 (2d Cir. 1980).

[8] Lewis v. S. S. Baune, 534 F.2d 1115, 1124 (5th Cir. 1976).

rights upon a class of beneficiaries.  Id.  Whether a federal statute creates a right enforceable under § 1983 is addressed by considering three factors:  "(1) whether Congress intended for the provision to benefit the plaintiff; (2) whether the plaintiff can show that the right in question is not so vague and amorphous that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the states."  S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 602 (5th Cir. 2004) (quotation marks omitted).

In her first cause of action, Romano cites Title 42 U.S.C. § 1396a(a)(10)(A)(ii)(I)[9] and § 1396a(a)(8).[10]  Rec. Doc. 1, at 12, ¶ 69.  The Fifth Circuit has found that the former provision, § 1396a(a)(10)(A), creates a right enforceable under § 1983.  Hood, 391 F.3d at 603.  As to the latter, § 1396a(a)(8), this Court in Blanchard v. Forrest, No. 93-3780, 1994 WL 495857, at *7 (E.D. La. Sept. 6, 1994), aff'd, 71 F.3d 1163 (5th Cir. 1996), concluded that Congress unambiguously intended to create a

---

[9] "A State plan for medical assistance must provide" for medical assistance to be made available "at the option of the State, to any group or groups of individuals" who meet certain criteria.  42 U.S.C. § 1396a(a)(10)(A)(ii)(I) (footnote omitted).

[10] "A State plan for medical assistance must provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).

private right of action under § 1983 for a violation of that
statutory provision.  In her second cause of action, Romano
claims she did not get a fair hearing, in violation of Title 42
U.S.C. § 1396a(a)(3).[11]  Rec. Doc. 1, at 14, ¶ 85.  This Court
has concluded that this statutory provision also is enforceable
under § 1983.  Blanchard, 1994 WL 495857, at *7.  As to §§
1396a(a)(8) and 1396a(a)(3), and consistent with the Court's
analysis in Blanchard, the Court finds that these statutory
provisions meet the three-part test under Hood, 391 F.3d at 602.

First, §§ 1396a(a)(8) and 1396a(a)(3) contain language
showing that Congress intended to confer a benefit on individuals
who are entitled to Medicaid, rather than to seek aggregate
performance of Medicaid obligations by administering states.  See
Blanchard, 1994 WL 495857, at *5.  Specifically, these provisions
require a state plan to provide an opportunity for a fair hearing
to an *individual* whose claim is denied, § 1396a(a)(3), and to
provide that all *individuals* wishing to apply for medical
assistance will have the opportunity to do so and that such
assistance will be furnished with reasonable promptness to all
eligible *individuals*, § 1396a(a)(8).  Second, these provisions

---

[11] "A State plan for medical assistance must provide for granting an
opportunity for a fair hearing before the State agency to any individual whose
claim for medical assistance under the plan is denied or is not acted upon
with reasonable promptness."  42 U.S.C. § 1396a(a)(3).

unambiguously impose binding obligations on the states.  Both sub-subsections are followed by the applicable subsection's introductory language that "[a] State plan for medical assistance *must* . . . .". § 1396a(a) (emphasis added).  Third, as this Court in <u>Blanchard</u> found, the rights are not so vague and amorphous that their enforcement is beyond judicial competence, because the accompanying regulations flesh out the specific duties imposed under the statute.[12]

Finally, in her third cause of action, Romano invokes due process under the United States Constitution, Rec. Doc. 1, at 15-16, ¶¶ 88, 93, which clearly invokes § 1983.  Romano carries her burden of proving that the federal law she invokes provides her with a private right of action.

### 4.  Abstention

Under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), DHH

---

[12] <u>See</u> <u>Blanchard</u>, 1994 WL 495857, at *6.  Section 1396a(a)(3) requires the provision of a "fair hearing."  Title 42 C.F.R. § 431.244 sets out a number of specific requirements for hearings, including what the record should contain, access to the record, the requisite decision to be rendered, and the timeline for agency action.  <u>See</u> <u>also</u> 42 C.F.R. §§ 431.200-431.250 (subpart of CFR providing specific rules on fair hearings).  The application of such standards would not strain judicial competence.  Nor would enforcement of § 1396a(a)(8), which, in part, requires a state plan to provide that medical assistance will be furnished with reasonable promptness to all eligible individuals.  What constitutes a timely eligibility determination is set out in Title 42 C.F.R. § 435.911.

requests that the Court exercise abstention.[13]  It argues that
Congress intended to provide a participating state like Louisiana
that establishes a Medicaid plan with a large measure of
regulatory oversight by providing for a statutorily compliant
state plan to receive federal agency approval.  DHH avers that
CMS has approved Louisiana's Medicaid plan, and that if DHH does
not perform its function in accordance with federal requirements,
CMS will intervene and deny federal funding for the particular
part of the program that is aberrant.  However, the factors
relevant to <u>Burford</u> abstention do not weigh in favor of
abstention in this case:

> (1) whether the cause of action arises under federal or
> state law (finding abstention inappropriate where the
> case did not involve a state-law claim); (2) whether
> the case requires inquiry into unsettled issues of
> state law, or into local facts; (3) the importance of
> the state interest involved; (4) the state's need for a
> coherent policy in that area; and (5) the presence of a
> special state forum for judicial review.

<u>Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.</u>, 627 F.3d
134, 144 (5th Cir. 2010).  The Court agrees with Romano's
application of these factors:  (1) the cause of action is

---

[13] "<u>Burford</u> permits a federal court to abstain from a case 'only if it
presents difficult questions of state law bearing on policy problems of
substantial public import . . . or if its adjudication in a federal forum
would be disruptive of state efforts to establish a coherent policy with
respect to a matter of substantial public concern.'"  <u>Crear v. JP Morgan Chase
Bank N.A.</u>, 2011 WL 1129574, at *2 (5th Cir. Mar. 28, 2011) (quoting
<u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 726-27 (1996)).

federal; (2) there are no apparent issues of state law; (3) the state's interest must bend to proper application of federal Medicaid law; (4) the state's need for coherence must also bend to proper application of federal law; and (5) there is no special state forum for judicial review.  The Court agrees with Romano that DHH's request that this Court not exercise jurisdiction, or its argument that it does not have jurisdiction, fails to recognize this Court's concurrent jurisdiction.  The motion to dismiss must be denied.

**B.  Motion for Summary Judgment**

**1.  Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All

17

reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.  <u>Little</u>, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."  <u>Delta</u>, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  See id. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  See, e.g., id. at 325; Little, 37 F.3d at 1075.

**2.  Did DHH utilize the wrong sequential evaluation?**

As initial matter, it is necessary to establish what law governs Romano's claim.  Louisiana has opted to provide Medicaid to individuals who are eligible for Social Security Supplemental Security Income ("SSI") benefits under federal law.  Rec. Doc. 11-12, at 12 (Medicaid Eligibility Manual stating that the category of disabled persons includes those who receive disability-based SSI); 50 LA. ADMIN. CODE Pt. III, § 2305(A) (the Louisiana Disability Medicaid Program provides Medicaid-only coverage to individuals who are aged or disabled and who meet income and resource requirements for SSI cash assistance).  As the state agency responsible for administering the Medicaid program, DHH must use SSI standards in making Medicaid determinations.  50 LA. ADMIN. CODE Pt. II, § 10101 (in Louisiana, DHH is the single state agency responsible for the administration of the Medicaid Program).  Furthermore, SSI disability standards are adopted by the federal Medicaid statute.  See 42 U.S.C. §

19

1396d(a)(vii) (Medicaid statute incorporating the disability

standard of 42 U.S.C. § 1382c); 42 U.S.C. § 1382c (Social

Security SSI statute setting forth definitions, including the

definition of disability).  The federal Medicaid regulations

expressly incorporate SSI disability regulations.  42 C.F.R. §

435.541(d)(2) ("The agency must make a determination of

disability . . . [i]n accordance with the requirements for

evaluating that evidence under the SSI program specified in 20

CFR 416.901 through 416.998.").[14]  Therefore, the SSI disability

regulations are incorporated into federal Medicaid law.

One of the incorporated Social Security SSI regulations (and

therefore a precept of federal Medicaid law) sets out a seven-

step process for disability reviews concerning decisions of

continuing disability.  See 20 C.F.R. § 416.994(b)(5) (setting

out seven-step process and stating that "we will follow specific

steps . . . . The steps are as follows.").  This seven-step

process for determining whether an SSI recipient continues to be

disabled, is different from the five-step process used to

---

[14] The regulation actually states that it applies, and thus incorporates SSI regulations, to the extent one of several enumerated circumstances exists. 42 C.F.R. § 435.541(c).  Those circumstances address a number of considerations, including whether an individual applies for Medicaid as a non-cash recipient, whether an individual has applied for Social Security SSI cash benefits, and whether or not a State has a "section 1634" agreement with the Social Security Administration.  Id.  DHH does not argue that none of these circumstances exist.

initially establish whether an SSI applicant is disabled.  See 20 C.F.R. § 416.920(a)(1)-(2) ("This section explains the five-step sequential evaluation process we use to decide whether you are disabled . . . . These rules apply to you if . . . you file an application for Supplemental Security Income disability benefits.").  It is not mere happenstance that there are two separate regulations with two different processes, one for determining disability status and one for addressing whether it continues.  The regulation setting forth the former explicitly states, "If you are already receiving disability benefits, *we will use a different sequential evaluation process to decide whether you continue to be disabled.* We explain this process in § 416.994(b)(5)."  20 CFR § 416.920(a)(5) (emphasis added).  This "different sequential evaluation process" in § 416.994(b)(5) is the above-mentioned seven-step process.

It is undisputed that DHH did not follow the seven-step process for determining whether Romano had a continuing disability, based upon the ALJ's use of the five-step process in affirming DHH's decision.[15]  Moreover, that DHH did not use the requisite seven-step process is evident from several aspects of

---

[15] See Rec. Doc. 11-1, at 4 (Romano's Statement of Uncontested Material Facts, No. 27:  "In assessing disability the Administrative Law Judge applied the five stage sequential evaluation that is set out in 20 C.F.R. § 416.920.");  Rec. Doc. 14-1 (DHH not contesting Romano's assertion).

the ALJ's decision upholding DHH's termination decision. First,
the ALJ characterized his decision-making process as a five-step
evaluation process.[16] Second, although the ALJ concluded that
Romano's conditions had medically improved, there is no
indication that the ALJ concluded that the improvement had a
significant effect on her ability to work, as is required under
step three, if medical improvement is to serve as a basis for a
finding that disability no longer exists. 20 C.F.R. §
416.994(b)(5)(iii) ("Step 3. If there has been medical
improvement, we must determine whether it is related to your
ability to do work . . . .").

The Court finds that DHH's failure to follow the seven-step
process violates federal Medicaid law. As stated previously, the
law requires that "[a] State plan for medical assistance must
provide that all individuals wishing to make application for
medical assistance under the plan shall have opportunity to do
so, and that *such assistance shall be furnished* with reasonable
promptness *to all eligible individuals*." 42 U.S.C. § 1396a(a)(8)
(emphasis added). Thus, the statute requires a state Medicaid
plan to provide that Medicaid assistance will be furnished to all

---

[16] Rec. Doc. 11-11, at 4 (ALJ opinion stating that ALJ used "the five-step sequential evaluation process established by the Social Security Administration").

who are eligible.  A Medicaid regulation implementing this statute[17] provides that "[t]he agency must . . . continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930(b).  This provision implies that assistance may not be terminated until an individual is *properly* found ineligible.[18]  DHH's failure to use the requisite seven-step plan constituted an improper finding of ineligibility.  The Court has already found that § 1396a(a)(8) creates a right of action enforceable under § 1983.  Therefore, based on DHH's failure to properly find Romano ineligible for Medicaid, under § 1396a(a)(8),[19] the Court holds that DHH's decision deprived Romano of a right secured her by federal law—to receive Medicaid until she is properly found to be ineligible.

---

[17] See Westside Mothers v. Olszewski, 454 F.3d 532, 540 (6th Cir. 2006) (listing a couple regulations, including 42 C.F.R. § 435.930, that implement 42 U.S.C. § 1396a(a)(8) and § 1396a(a)(10)).

[18] See Crippen v. Kheder, 741 F.2d 102, 106 (6th Cir. 1984) (42 C.F.R. § 435.930(b) required state department of social services to find plaintiff ineligible for Medicaid prior to terminating her from the program); Sharp, 700 F.2d at 752 (state department of public welfare was required to furnish Medicaid benefits until a recipient was found to be ineligible, which required, in the case, more than a finding of automatic ineligibility without a redetermination process after department learned of plaintiffs' ineligibility for automatic Medicaid coverage).

[19] The Court need not decide whether DHH's failure to use the seven-step process was also a violation of the other cited Medicaid provisions or the Fourteenth Amendment.

**3. Did DHH's limitation of evidence to the prior two years violate federal law?**

A provision of the Social Security Act that has been incorporated by the Medicare Act (per the previous discussion) states that a decision that a previous benefits recipient is not eligible for benefits "shall be made *on the basis of **all** the evidence available in the individual's case file*, including new evidence concerning the individual's prior or current condition . . . .". 42 U.S.C. § 1382c(a)(4) (emphasis added).  DHH does not present any argument that "all" should be interpreted any differently than its plain meaning suggests.  The ALJ decision stated that DHH used two years of medical records in its analysis, Rec. Doc. 11-11, at 2, although approximately 600 pages of medical records dating back to 1997 were within the record, id. at 3.  The ALJ suggested that it is DHH's policy to use the most recent two years of medical records to determine whether disability continues.  Id. ("[T]he Department uses the most recent two years of medical records to determine Appellant's current condition.").  Because DHH did not make its termination decision on the basis of all the evidence in Romano's case file, the Court holds that DHH deprived Romano of her right under Title 42 U.S.C. § 1396a(a)(8) to receive Medicaid benefits until

properly found to be ineligible.

**4.  Did DHH improperly fail to consider evidence of changes in symptoms, signs, and/or laboratory findings associated with Romano's impairments?**

The seven-step evaluation requires a finding of whether medical improvement has occurred, as part of the DHH's decision concerning whether or not a Medicaid recipient suffers from a continuing disability.  20 C.F.R. § 416.994(b)(5) (if there is no Step 1 determination that a recipient has an impairment that meets or equals the severity of a listed impairment, Step 2 requires consideration of whether there has been medical improvement).  The regulation defining medical improvement states that a determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .".  Id. § 416.994(b)(1)(I).  DHH raises no genuine factual dispute that it did not make a finding of medical improvement in accordance with this regulatory definition.

DHH does not contest[20] that the record evidence Romano cites are the sole documents that purport to explain the reason for the

---

[20] See Rec. Doc. 14-1, at 1-2 (DHH's Statement of Material Facts).

termination of her Medicaid benefits.[21]   In the record is DHH's

closure letter dated November 14, 2011, which states as the basis

of the finding that Romano was no longer disabled:

> We looked at your situation in all Medicaid programs
> and you do not qualify at this time.  If your medical
> condition gets worse or you have a new medical
> condition that you think is a disability and you have
> medical information to prove this, you may reapply for
> Medicaid.  Policy Reference MEM G-1610.

Rec. Doc. 11-7, at 1.  Another document entitled "MEDT Disability

Decision Request" states that a residual functional capacity was

considered, but it otherwise contains sparse, illegible

handwriting.  Rec. Doc. 11-8, at 2.  Another "MEDT Disability

Decision Request" contains some limited reasoning for the

decision:  "Does not Meet Disability . . . Disability of 12mths

not established . . . RFC Physical - Light . . . Condition does

not justify evaluation . . . .".  Rec. Doc. 11-9, at 1-4.

Another document, entitled "Summary of Evidence," states, in

pertinent part:

> On August 8, 2011, MEDT concluded that Ms. Romano's
> medical data does not meet the factor of disability
> (Document 15).  Ms. Romano is not eligible for any
> Medicaid programs in the disabled category because she
> has not been determined disabled by the Social Security
> Administration or MEDT (Policy G-1610, Document 16).

---

[21] See Rec. Doc. 11-1, at 3 (No. 16:  "The only documents included that purported to explain the reason are Exhibits E, F, G, & H.").

Rec. Doc. 11-10, at 2.  None of this information emanating from DHH indicates that DHH considered changes in Romano's symptoms, signs, and/or laboratory findings associated with her impairments.

Additionally, the ALJ's decision does not indicate any consideration of such evidence.  The ALJ found "relative improvement" based on Romano's 2011 medical records, and the ALJ based her decision largely on the fact that in 2011, the number of dates of service was half of what it had been in 2010.  Rec. Doc. 11-11, at 3.  The ALJ found "relative improvement and stable, well-managed conditions," but did not consider any changes in symptoms, signs, or lab findings.  Id. at 4.  DHH raises no factual issue as to whether it failed to consider evidence of changes in symptoms, signs, and/or laboratory findings associated with Romano's impairments in determining whether there was continuing disability, as required by 20 C.F.R. § 416.994(b)(1)(I).  Therefore, the Court holds that DHH deprived Romano of her right under 42 U.S.C. § 1396a(a)(8) to receive Medicaid benefits until properly found to be ineligible.

Based on the several instances of DHH's failure to use the federally mandated analysis for reaching a decision to terminate Medicaid benefits and DHH's exclusion of federally mandated

evidence, the Court holds that DHH improperly determined that Romano is no longer disabled.  She is entitled to judgment in her favor.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the defendant Bruce D. Greenstein's motion to dismiss (Rec. Doc. 9) is **DENIED** and that the plaintiff Tiffany L. Romano's motion for summary judgment (Rec. Doc. 11) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the Louisiana Department of Health and Hospitals is to reinstate Tiffany Romano's Medicaid benefits until it complies with federal law concerning the mandated decision-making process with respect to a decision regarding continuing disability, in the following particulars: (1) DHH must follow the seven-step sequential evaluation set out in 20 C.F.R. § 416.994; (2) DHH must consider all evidence in the file; and (3) DHH must consider evidence of changes in signs, symptoms, and/or laboratory findings associated with Romano's impairments in deciding whether or not there is medical improvement, and therefore, whether Romano has a continuing disability.

**IT IS FURTHER ORDERED** that Romano's claims for injunctive

28

relief concerning the fair hearing and notice procedures are dismissed without prejudice.[22]

New Orleans, Louisiana, this 15th day of May, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[22] Romano authorized dismissal of such claims based on the other relief granted by the Court.  Rec. Doc. 11-2, at 21 ("If the Court orders Ms. Romano's reinstatement and the injunctive relief requiring compliance with the standards for terminating disability set out in 42 U.S.C. § 1382c(a)(4) and 20 C.F.R. § 416.994, then Ms. Romano authorizes the dismissal of her other claims for injunctive relief (concerning the fair hearing and notice procedures), provided the dismissal is without prejudice.").