UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ROMANO                                    CIVIL ACTION

VERSUS                                    NO: 12-469

GREENSTEIN                                SECTION: "J"(5)

## ORDER AND REASONS

Before the Court are the defendant's motion to dismiss (Rec.
Doc. 9) and the plaintiff's opposition to same (Rec. Doc. 13); as
well as the plaintiff's motion for summary judgment (Rec. Doc.
11) and the defendant's opposition to same (Rec. Doc. 14).  The
motions are before the Court on supporting memoranda and without
oral argument.  Having considered the motions and legal
memoranda, the record, and the applicable law, the Court now
issues its ruling.


## PROCEDURAL HISTORY AND BACKGROUND FACTS

Tiffany L. Romano brings this lawsuit against Bruce D.
Greenstein in his official capacity as Secretary of the Louisiana
Department of Health and Hospitals ("DHH"), which is the agency

designated by the State of Louisiana to administer the federal

Medicaid program for the State.[1]  Romano sues under Title 42

U.S.C. § 1983, the Declaratory Judgment Act, the federal Medicaid

Act, and the United States Constitution for injunctive relief

from decisions, procedures, and policies of DHH that she alleges

have illegally terminated her federal Medicaid assistance.

Romano seeks both the reversal of DHH's decision to terminate her

Medicaid benefits and changes to DHH's standards for evaluating

disability status and for issuance of notices of decision

regarding such status.  Romano's complaint alleges the following

facts.

        Romano's impairments include severe myofascial pain,

frequent migraine headaches, weaknesses in her grip and lower

extremities, and frequent gastrointestinal problems.  During or

before December 2010, DHH determined that Romano qualified for

Medicaid assistance.  Subsequently, on August 15, 2011, DHH

---

        [1] Hereinafter, the Court refers to the defendant as "DHH."  The Court
recognizes that the named defendant is Bruce D. Greenstein, but because the
suit is against him in his official capacity, the Court refers to the
defendant as "DHH" for the sake of convenience.  <u>See</u> <u>Will v. Mich. Dept. of
State Police</u>, 491 U.S. 58, 71 (1989) (suit against a state official is his
official capacity is generally suit against the State itself).  That the Court
refers to the defendant as "DHH" is not meant to imply that the suit against
Greenstein in his official capacity cannot invoke Title 42 U.S.C. § 1983.  <u>See</u>
<u>id.</u> n.10 ("Of course a state official in his or her official capacity, when
sued for injunctive relief, would be a person under § 1983 because
official-capacity actions for prospective relief are not treated as actions
against the State.") (quotation marks omitted).

issued a decision that Romano was no longer eligible for Medicaid. Upon her appeal of DHH's decision, a state administrative law judge ("ALJ") reversed the termination. DHH adopted the decision. Thereafter, on November 14, 2011, DHH again proposed to terminate Romano's Medicaid benefits. She again appealed and received a hearing before an ALJ on January 10, 2012; over 600 pages of medical records were in the record. The ALJ affirmed DHH's denial of Medicaid, referring to a standard under which DHH uses the most recent two years of medical records to determine Romano's current condition. The ALJ concluded that Romano's medical condition had improved based on a decreasing number of medical appointments in the previous two years under consideration.

Romano alleges in her complaint that DHH's procedures violate federal Medicaid law. She asserts that the two-years-of-medical-records rule is one such violation. She argues that many aspects of the decision in her case are not properly supported. She avers that DHH used incorrect disability standards. Her first cause of action alleges that DHH violates the Social Security Act requirement that Louisiana provide Medicaid to all eligible individuals. Her second cause of action alleges that by failing to provide notices of its decisions that provide the

reasons for the decisions, DHH violates the Medicaid fair hearing requirements. Romano's third cause of action alleges that by terminating Medicaid under improper standards and with denial notices that do not give DHH's reasoning, DHH has terminated Romano's property interest in Medicaid benefits without due process of law. Romano prays for a preliminary injunction continuing Medicaid benefits, declaratory relief, the reversal of DHH's termination of Medicaid, a permanent injunction of DHH from violating federal Medicaid law, and reasonable attorney's fees and costs.

## THE PARTIES' ARGUMENTS

### A. Motion to Dismiss

DHH argues that Romano fails to state a claim upon which relief can be granted and that subject matter jurisdiction is absent. It argues that Romano has no private right of action under the statutory authority she invokes. DHH argues that the Court lacks subject matter jurisdiction because Romano has an available adequate administrative remedy at law through the state judicial process of appealing the ALJ's decision. It argues that Romano is improperly requesting that the Court exercise subject matter jurisdiction and perform the state court's judicial review

function.  Relatedly, DHH argues that Romano's failure to pursue
the state level judicial review process of the ALJ's decision
equates to a failure to exhaust administrative remedies.  In the
alternative, DHH requests that the Court exercise abstention
because the Centers for Medicare and Medicaid Services ("CMS")
has delegated administration of the Louisiana Medicaid program to
DHH, which provides an administrative appeal process.

Romano argues that state law does not require her to pursue
an action in state court instead of or in advance of bringing her
claim in federal court.  She argues that the existence of
judicial review in state court does not preclude her § 1983 claim
brought in federal court.   She asserts that abstention does
not apply in this case.  Romano argues that the Medicaid
provisions she relies upon are privately enforceable by a § 1983
lawsuit.

**B.  Motion for Summary Judgment**

Romano argues that summary judgment is appropriate in this
case because it turns on the legal question of whether the state
agency, DHH, is complying with the federal standard for
determining whether Romano's disability has ceased.  The
underpinning of her claim is that DHH employed the wrong analysis
and excluded federally required evidence in evaluating whether

her disability has continued.  First, she argues that DHH improperly used a five-step sequential evaluation applicable to *initial* disability determinations, rather than the appropriate seven-step evaluation that should be used to determine *continuing* disability.  Second, she argues that DHH violated federal regulations by not considering all available evidence in the case file, but rather executing DHH's policy of only considering the prior two years of medical evidence.  Third, she argues that DHH did not consider evidence of changes in her symptoms, signs, and/or laboratory findings associated with her impairments, as is required under federal law.  As a result, Romano requests that the Court (1) order reinstatement of her Medicaid and (2) order that DHH may not terminate Medicaid in violation of federal law, as set forth above.

DHH, in its opposition, mainly re-urges arguments set forth in its motion to dismiss.  DHH asserts that it provided Romano with disability-based Medicaid benefits for approximately four years after her federal Social Security Disability benefits ceased and that it continued coverage until she ceased to meet the disability criteria.  It argues that the law does not require it to follow the seven-step sequential evaluation process referenced by Romano.  DHH argues that the delegation of a

hearing and review is made to the state-level administrator and state courts.

## DISCUSSION

**A. Motion to Dismiss**

**1. Legal Standard**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" <u>Krim v. pcOrder.com, Inc.</u>, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. <u>Randall D. Wolcott, M.D., P.A. v. Sebelius</u>, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). <u>United States v. City of New Orleans</u>, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547

(2007)).  A claim is facially plausible when the plaintiff pleads
facts that allow the court to "draw the reasonable inference that
the defendant is liable for the misconduct alleged."  Id.  A
court must accept all well-pleaded facts as true and must draw
all reasonable inferences in favor of the plaintiff.  Lormand v.
U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker
v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not,
however, bound to accept as true legal conclusions couched as
factual allegations.  Iqbal, 556 U.S. at 678.

### 2.  Subject Matter Jurisdiction

Federal law requires the state to provide a fair hearing to
Medicaid claimants whose claims have been denied.  42 U.S.C. §
1396a(a)(3).  The Louisiana DHH avers that it has complied with
this federal requirement by providing claimants with hearings
before ALJs.  The Louisiana Legislature has provided for appeals
from ALJ decisions to state district courts.  See LA. REV. STAT. §
49:964(A)(1) (Louisiana Administrative Procedure Act ("LAPA")
providing for judicial review of final agency decisions or
orders).  The cited state statute is the LAPA provision for
appeals of ALJ decisions, and it does not appear to be DHH's
creation of an appellate review process of Medicaid decisions.
DHH cites no applicable state law mandating an appeal to a state

district court of an ALJ's decision concerning a DHH Medicaid
determination.  It cites its state Medicaid plan, attached as an
exhibit to the motion to dismiss, but that document does not
state that an appeal must be made to state court.[2]  Furthermore,
the LAPA expressly states that it does not limit the scope of
judicial review available under "other means of review, redress,
relief, or trial de novo provided by law."  Id.  Because there is
nothing in state or federal law precluding a Medicaid claimant in
Louisiana who has exhausted his administrative remedy by
appealing to a state ALJ from seeking review in federal court,
the Court finds that Romano's decision not to seek judicial
review in state court of the ALJ's adverse decision does not
prevent this Court from exercising jurisdiction.

     DHH's argument—that Romano's "failure to exhaust" by not
filing suit in state court precludes this Court's subject matter
jurisdiction—seems to imply that Congress has mandated the claims
review procedure implemented by DHH under its Medicaid plan.  The
argument appears to be as follows:  (1) Congress requires that
Louisiana provide a fair hearing process in its state Medicaid

---

[2] The state plan simply states that "[t]he Appeals Bureau shall advise
the aggrieved of any rights he or she may have and of procedures required to
pursue civil remedies under Judicial Review subsequent to a negative decision
by the Bureau.").  Rec. Doc. 9-1, at 4.

plan[3]; (2) Louisiana has complied with this requirement by providing a fair hearing process via its Medicaid plan and the statutorily created judicial review procedure; and therefore (3) as a matter of federal law, Romano is required to exhaust available state procedure before coming to federal court. DHH begs the question because, even assuming the existence of a federally-compliant state *plan* providing for a process of review that must be exhausted prior to a suit in federal court, an important aspect of Romano's claim is that DHH *is not complying* with the congressionally mandated fair hearing process.[4] DHH cannot merely assert that its state Medicaid plan review procedure complies with federal law in an attempt to preclude a plaintiff from coming to federal court to seek to demonstrate how that plan, in actual practice applied to the plaintiff's case, is not federally compliant.

Moreover, DHH's analogy to the exhaustion requirement that exists in the context of federal agency decisions has little relevance to this case, which involves the decision of a state

---

[3] See 42 U.S.C. § 1396a(a)(3) ("A State plan for medical assistance must provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.").

[4] See Rec. Doc. 1, at 14, ¶ 85 (asserting that because of the procedures used in Romano's case, she "was not granted an opportunity for a fair hearing before the State agency *as required by 42 U.S.C. § 1396(a)(3) and the implementing regulations*") (emphasis added).

agency.  DHH cites federal law establishing a review process

whereby the decision of the Social Security Administration must

be administratively appealed.[5]  However, no federal agency

decision is involved in this case.  Even if an administrative

exhaustion requirement exists, Romano has completed it.  The

complaint alleges that Romano appealed DHH's position to a state

ALJ, who affirmed DHH's denial of disability.  Rec. Doc. 1, at 5,

¶ 27.  Therefore, contrary to DHH's assertion, Romano properly

invokes federal question jurisdiction through alleging that

Greenstein, in his official capacity as Secretary of the DHH, is

depriving her of federal rights under color of state law in

violation of Title 42 U.S.C. § 1983.  Put simply, exhaustion of

*administrative* remedies does not require suing in a state *court*.

Nor is the Court persuaded by DHH's argument that Romano is

not entitled to the permanent injunction she seeks because there

is another available adequate legal remedy—judicial review in

state court.[6]  First, Romano need not have filed suit in state

court prior to bringing her § 1983 claim in federal court.  See

---

[5] See 42 U.S.C. § 1395ii (Medicare provision incorporating § 405(h)); 42 U.S.C. § 405(h) (no decision of the Commissioner of Social Security may be reviewed "except as herein provided"); 42 U.S.C. § 405(g) (provision regarding judicial review).

[6] DHH also argues that the state-level judicial review process affords Romano greater rights than injunctive relief by permitting a stay order to be issued without a contradictory hearing and by permitting a reviewing state district court to conduct a *de novo* review of the administrative record.

<u>Curtis v. Taylor</u>, 648 F.2d 946, 949 (5th Cir. 1980) (where state asserted that the judicial review of agency action provided by a state administrative procedure act was an adequate remedy, the court stated, "If this is an argument that state judicial remedies must first be exhausted, the argument has been repeatedly rejected by the Supreme Court").  Second, the loss of Medicaid can pose irreparable injury,[7] which is a basis for showing no adequate remedy at law.[8]  Romano has carried her burden of proving that the Court has subject matter jurisdiction.

### 3.  Private Right of Action

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws."  <u>Equal Access for El Paso, Inc. v. Hawkins</u>, 509 F.3d 697, 702 (5th Cir. 2007) (quotation marks omitted).  To seek redress under § 1983, the plaintiff must assert the violation of a federal right.  <u>Id.</u>  A claim based on the violation of a federal statute is actionable under § 1983 only when the statute creates rights, privileges, or immunities in a particular plaintiff, which requires a determination of whether Congress intended to confer individual

_____

[7] <u>Mass. Ass'n of Older Americans v. Sharp</u>, 700 F.2d 749, 753 (1st Cir. 1983); <u>Caldwell v. Blum</u>, 621 F.2d 491, 498 (2d Cir. 1980).

[8] <u>Lewis v. S. S. Baune</u>, 534 F.2d 1115, 1124 (5th Cir. 1976).

12

rights upon a class of beneficiaries.  Id.  Whether a federal
statute creates a right enforceable under § 1983 is addressed by
considering three factors:  "(1) whether Congress intended for
the provision to benefit the plaintiff; (2) whether the plaintiff
can show that the right in question is not so vague and amorphous
that its enforcement would strain judicial competence; and (3)
whether the statute unambiguously imposes a binding obligation on
the states."  S.D. ex rel. Dickson v. Hood, 391 F.3d 581, 602
(5th Cir. 2004) (quotation marks omitted).

In her first cause of action, Romano cites Title 42 U.S.C. §
1396a(a)(10)(A)(ii)(I)[9] and § 1396a(a)(8).[10]  Rec. Doc. 1, at 12,
¶ 69.  The Fifth Circuit has found that the former provision, §
1396a(a)(10)(A), creates a right enforceable under § 1983.  Hood,
391 F.3d at 603.  As to the latter, § 1396a(a)(8), this Court in
Blanchard v. Forrest, No. 93-3780, 1994 WL 495857, at *7 (E.D.
La. Sept. 6, 1994), aff'd, 71 F.3d 1163 (5th Cir. 1996),
concluded that Congress unambiguously intended to create a

---

[9] "A State plan for medical assistance must provide" for medical
assistance to be made available "at the option of the State, to any group or
groups of individuals" who meet certain criteria.  42 U.S.C. §
1396a(a)(10)(A)(ii)(I) (footnote omitted).

[10] "A State plan for medical assistance must provide that all
individuals wishing to make application for medical assistance under the plan
shall have opportunity to do so, and that such assistance shall be furnished
with reasonable promptness to all eligible individuals."  42 U.S.C. §
1396a(a)(8).

private right of action under § 1983 for a violation of that

statutory provision.  In her second cause of action, Romano

claims she did not get a fair hearing, in violation of Title 42

U.S.C. § 1396a(a)(3).[11]  Rec. Doc. 1, at 14, ¶ 85.  This Court

has concluded that this statutory provision also is enforceable

under § 1983.  Blanchard, 1994 WL 495857, at *7.  As to §§

1396a(a)(8) and 1396a(a)(3), and consistent with the Court's

analysis in Blanchard, the Court finds that these statutory

provisions meet the three-part test under Hood, 391 F.3d at 602.

First, §§ 1396a(a)(8) and 1396a(a)(3) contain language

showing that Congress intended to confer a benefit on individuals

who are entitled to Medicaid, rather than to seek aggregate

performance of Medicaid obligations by administering states.  See

Blanchard, 1994 WL 495857, at *5.  Specifically, these provisions

require a state plan to provide an opportunity for a fair hearing

to an *individual* whose claim is denied, § 1396a(a)(3), and to

provide that all *individuals* wishing to apply for medical

assistance will have the opportunity to do so and that such

assistance will be furnished with reasonable promptness to all

eligible *individuals*, § 1396a(a)(8).  Second, these provisions

---

[11] "A State plan for medical assistance must provide for granting an
opportunity for a fair hearing before the State agency to any individual whose
claim for medical assistance under the plan is denied or is not acted upon
with reasonable promptness."  42 U.S.C. § 1396a(a)(3).

unambiguously impose binding obligations on the states.  Both

sub-subsections are followed by the applicable subsection's

introductory language that "[a] State plan for medical assistance

*must* . . . .". § 1396a(a) (emphasis added).  Third, as this Court

in <u>Blanchard</u> found, the rights are not so vague and amorphous

that their enforcement is beyond judicial competence, because the

accompanying regulations flesh out the specific duties imposed

under the statute.[12]

Finally, in her third cause of action, Romano invokes due

process under the United States Constitution, Rec. Doc. 1, at 15-

16, ¶¶ 88, 93, which clearly invokes § 1983.  Romano carries her

burden of proving that the federal law she invokes provides her

with a private right of action.

**4.  Abstention**

Under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943), DHH

---

[12] <u>See</u> <u>Blanchard</u>, 1994 WL 495857, at *6.  Section 1396a(a)(3) requires
the provision of a "fair hearing."  Title 42 C.F.R. § 431.244 sets out a
number of specific requirements for hearings, including what the record should
contain, access to the record, the requisite decision to be rendered, and the
timeline for agency action.  <u>See</u> <u>also</u> 42 C.F.R. §§ 431.200-431.250 (subpart of
CFR providing specific rules on fair hearings).  The application of such
standards would not strain judicial competence.  Nor would enforcement of §
1396a(a)(8), which, in part, requires a state plan to provide that medical
assistance will be furnished with reasonable promptness to all eligible
individuals.  What constitutes a timely eligibility determination is set out
in Title 42 C.F.R. § 435.911.

requests that the Court exercise abstention.[13]  It argues that

Congress intended to provide a participating state like Louisiana

that establishes a Medicaid plan with a large measure of

regulatory oversight by providing for a statutorily compliant

state plan to receive federal agency approval.  DHH avers that

CMS has approved Louisiana's Medicaid plan, and that if DHH does

not perform its function in accordance with federal requirements,

CMS will intervene and deny federal funding for the particular

part of the program that is aberrant.  However, the factors

relevant to Burford abstention do not weigh in favor of

abstention in this case:

> (1) whether the cause of action arises under federal or
> state law (finding abstention inappropriate where the
> case did not involve a state-law claim); (2) whether
> the case requires inquiry into unsettled issues of
> state law, or into local facts; (3) the importance of
> the state interest involved; (4) the state's need for a
> coherent policy in that area; and (5) the presence of a
> special state forum for judicial review.

Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d

134, 144 (5th Cir. 2010).  The Court agrees with Romano's

application of these factors:  (1) the cause of action is

---

[13] "Burford permits a federal court to abstain from a case 'only if it
presents difficult questions of state law bearing on policy problems of
substantial public import . . . or if its adjudication in a federal forum
would be disruptive of state efforts to establish a coherent policy with
respect to a matter of substantial public concern.'"  Crear v. JP Morgan Chase
Bank N.A., 2011 WL 1129574, at *2 (5th Cir. Mar. 28, 2011) (quoting
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726-27 (1996)).

federal; (2) there are no apparent issues of state law; (3) the
state's interest must bend to proper application of federal
Medicaid law; (4) the state's need for coherence must also bend
to proper application of federal law; and (5) there is no special
state forum for judicial review.  The Court agrees with Romano
that DHH's request that this Court not exercise jurisdiction, or
its argument that it does not have jurisdiction, fails to
recognize this Court's concurrent jurisdiction.  The motion to
dismiss must be denied.

**B.  Motion for Summary Judgment**

    **1.  Legal Standard**

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(c)(2); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,
322-23 (1986); <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075
(5th Cir. 1994).  When assessing whether a dispute as to any
material fact exists, the Court considers "all of the evidence in
the record but refrains from making credibility determinations or
weighing the evidence."  <u>Delta & Pine Land Co. v. Nationwide
Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008).  All

17

reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory
allegations or unsubstantiated assertions.  <u>Little</u>, 37 F.3d at
1075. A court ultimately must be satisfied that "a reasonable
jury could not return a verdict for the nonmoving party."  <u>Delta</u>,
530 F.3d at 399.

    If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must
come forward with evidence which would 'entitle it to a directed
verdict if the evidence went uncontroverted at trial.'"  <u>Int'l</u>
<u>Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th
Cir. 1991) (citation omitted).  The nonmoving party can then
defeat the motion by either countering with sufficient evidence
of its own, or "showing that the moving party's evidence is so
sheer that it may not persuade the reasonable fact-finder to
return a verdict in favor of the moving party."  <u>Id.</u> at 1265.

    If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record is insufficient with respect to an essential element
of the nonmoving party's claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts
showing that a genuine issue exists.  See id. at 324.  The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial.  See,
e.g., id. at 325; Little, 37 F.3d at 1075.

**2.  Did DHH utilize the wrong sequential evaluation?**

As initial matter, it is necessary to establish what law
governs Romano's claim.  Louisiana has opted to provide Medicaid
to individuals who are eligible for Social Security Supplemental
Security Income ("SSI") benefits under federal law.  Rec. Doc.
11-12, at 12 (Medicaid Eligibility Manual stating that the
category of disabled persons includes those who receive
disability-based SSI); 50 LA. ADMIN. CODE Pt. III, § 2305(A) (the
Louisiana Disability Medicaid Program provides Medicaid-only
coverage to individuals who are aged or disabled and who meet
income and resource requirements for SSI cash assistance).  As
the state agency responsible for administering the Medicaid
program, DHH must use SSI standards in making Medicaid
determinations.  50 LA. ADMIN. CODE Pt. II, § 10101 (in Louisiana,
DHH is the single state agency responsible for the administration
of the Medicaid Program).  Furthermore, SSI disability standards
are adopted by the federal Medicaid statute.  See 42 U.S.C. §

1396d(a)(vii) (Medicaid statute incorporating the disability

standard of 42 U.S.C. § 1382c); 42 U.S.C. § 1382c (Social

Security SSI statute setting forth definitions, including the

definition of disability).  The federal Medicaid regulations

expressly incorporate SSI disability regulations.  42 C.F.R. §

435.541(d)(2) ("The agency must make a determination of

disability . . . [i]n accordance with the requirements for

evaluating that evidence under the SSI program specified in 20

CFR 416.901 through 416.998.").[14]  Therefore, the SSI disability

regulations are incorporated into federal Medicaid law.

One of the incorporated Social Security SSI regulations (and

therefore a precept of federal Medicaid law) sets out a seven-

step process for disability reviews concerning decisions of

continuing disability.  See 20 C.F.R. § 416.994(b)(5) (setting

out seven-step process and stating that "we will follow specific

steps . . . . The steps are as follows.").  This seven-step

process for determining whether an SSI recipient continues to be

disabled, is different from the five-step process used to

---

[14] The regulation actually states that it applies, and thus incorporates
SSI regulations, to the extent one of several enumerated circumstances exists.
42 C.F.R. § 435.541(c).  Those circumstances address a number of
considerations, including whether an individual applies for Medicaid as a non-
cash recipient, whether an individual has applied for Social Security SSI cash
benefits, and whether or not a State has a "section 1634" agreement with the
Social Security Administration.  Id.  DHH does not argue that none of these
circumstances exist.

initially establish whether an SSI applicant is disabled.  <u>See</u> 20

C.F.R. § 416.920(a)(1)-(2) ("This section explains the five-step

sequential evaluation process we use to decide whether you are

disabled . . . . These rules apply to you if . . . you file an

application for Supplemental Security Income disability

benefits.").  It is not mere happenstance that there are two

separate regulations with two different processes, one for

determining disability status and one for addressing whether it

continues.  The regulation setting forth the former explicitly

states, "If you are already receiving disability benefits, *we

will use a different sequential evaluation process to decide

whether you continue to be disabled.* We explain this process in §

416.994(b)(5)."  20 CFR § 416.920(a)(5) (emphasis added).  This

"different sequential evaluation process" in § 416.994(b)(5) is

the above-mentioned seven-step process.

It is undisputed that DHH did not follow the seven-step

process for determining whether Romano had a continuing

disability, based upon the ALJ's use of the five-step process in

affirming DHH's decision.[15]  Moreover, that DHH did not use the

requisite seven-step process is evident from several aspects of

_____

[15] <u>See</u> Rec. Doc. 11-1, at 4 (Romano's Statement of Uncontested Material
Facts, No. 27:  "In assessing disability the Administrative Law Judge applied
the five stage sequential evaluation that is set out in 20 C.F.R. §
416.920."); Rec. Doc. 14-1 (DHH not contesting Romano's assertion).

the ALJ's decision upholding DHH's termination decision.  First,
the ALJ characterized his decision-making process as a five-step
evaluation process.[16]  Second, although the ALJ concluded that
Romano's conditions had medically improved, there is no
indication that the ALJ concluded that the improvement had a
significant effect on her ability to work, as is required under
step three, if medical improvement is to serve as a basis for a
finding that disability no longer exists.  20 C.F.R. §
416.994(b)(5)(iii) ("Step 3. If there has been medical
improvement, we must determine whether it is related to your
ability to do work . . . .").

The Court finds that DHH's failure to follow the seven-step
process violates federal Medicaid law.  As stated previously, the
law requires that "[a] State plan for medical assistance must
provide that all individuals wishing to make application for
medical assistance under the plan shall have opportunity to do
so, and that *such assistance shall be furnished* with reasonable
promptness *to all eligible individuals*."  42 U.S.C. § 1396a(a)(8)
(emphasis added).  Thus, the statute requires a state Medicaid
plan to provide that Medicaid assistance will be furnished to all

---

[16] Rec. Doc. 11-11, at 4 (ALJ opinion stating that ALJ used "the five-step sequential evaluation process established by the Social Security Administration").

who are eligible.  A Medicaid regulation implementing this statute[17] provides that "[t]he agency must . . . continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible."  42 C.F.R. § 435.930(b).  This provision implies that assistance may not be terminated until an individual is *properly* found ineligible.[18]  DHH's failure to use the requisite seven-step plan constituted an improper finding of ineligibility.  The Court has already found that § 1396a(a)(8) creates a right of action enforceable under § 1983.  Therefore, based on DHH's failure to properly find Romano ineligible for Medicaid, under § 1396a(a)(8),[19] the Court holds that DHH's decision deprived Romano of a right secured her by federal law—to receive Medicaid until she is properly found to be ineligible.

---

[17] See <u>Westside Mothers v. Olszewski</u>, 454 F.3d 532, 540 (6th Cir. 2006) (listing a couple regulations, including 42 C.F.R. § 435.930, that implement 42 U.S.C. § 1396a(a)(8) and § 1396a(a)(10)).

[18] See <u>Crippen v. Kheder</u>, 741 F.2d 102, 106 (6th Cir. 1984) (42 C.F.R. § 435.930(b) required state department of social services to find plaintiff ineligible for Medicaid prior to terminating her from the program); <u>Sharp</u>, 700 F.2d at 752 (state department of public welfare was required to furnish Medicaid benefits until a recipient was found to be ineligible, which required, in the case, more than a finding of automatic ineligibility without a redetermination process after department learned of plaintiffs' ineligibility for automatic Medicaid coverage).

[19] The Court need not decide whether DHH's failure to use the seven-step process was also a violation of the other cited Medicaid provisions or the Fourteenth Amendment.

**3. Did DHH's limitation of evidence to the prior two years violate federal law?**

A provision of the Social Security Act that has been incorporated by the Medicare Act (per the previous discussion) states that a decision that a previous benefits recipient is not eligible for benefits "shall be made *on the basis of **all** the evidence available in the individual's case file*, including new evidence concerning the individual's prior or current condition . . . .". 42 U.S.C. § 1382c(a)(4) (emphasis added). DHH does not present any argument that "all" should be interpreted any differently than its plain meaning suggests. The ALJ decision stated that DHH used two years of medical records in its analysis, Rec. Doc. 11-11, at 2, although approximately 600 pages of medical records dating back to 1997 were within the record, id. at 3. The ALJ suggested that it is DHH's policy to use the most recent two years of medical records to determine whether disability continues. Id. ("[T]he Department uses the most recent two years of medical records to determine Appellant's current condition."). Because DHH did not make its termination decision on the basis of all the evidence in Romano's case file, the Court holds that DHH deprived Romano of her right under Title 42 U.S.C. § 1396a(a)(8) to receive Medicaid benefits until

properly found to be ineligible.

**4. Did DHH improperly fail to consider evidence of changes in symptoms, signs, and/or laboratory findings associated with Romano's impairments?**

The seven-step evaluation requires a finding of whether medical improvement has occurred, as part of the DHH's decision concerning whether or not a Medicaid recipient suffers from a continuing disability. 20 C.F.R. § 416.994(b)(5) (if there is no Step 1 determination that a recipient has an impairment that meets or equals the severity of a listed impairment, Step 2 requires consideration of whether there has been medical improvement). The regulation defining medical improvement states that a determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .". Id. § 416.994(b)(1)(I). DHH raises no genuine factual dispute that it did not make a finding of medical improvement in accordance with this regulatory definition.

DHH does not contest[20] that the record evidence Romano cites are the sole documents that purport to explain the reason for the

_____

[20] See Rec. Doc. 14-1, at 1-2 (DHH's Statement of Material Facts).

25

termination of her Medicaid benefits.[21]  In the record is DHH's

closure letter dated November 14, 2011, which states as the basis

of the finding that Romano was no longer disabled:

> We looked at your situation in all Medicaid programs
> and you do not qualify at this time.  If your medical
> condition gets worse or you have a new medical
> condition that you think is a disability and you have
> medical information to prove this, you may reapply for
> Medicaid.  Policy Reference MEM G-1610.

Rec. Doc. 11-7, at 1.  Another document entitled "MEDT Disability

Decision Request" states that a residual functional capacity was

considered, but it otherwise contains sparse, illegible

handwriting.  Rec. Doc. 11-8, at 2.  Another "MEDT Disability

Decision Request" contains some limited reasoning for the

decision:  "Does not Meet Disability . . . Disability of 12mths

not established . . . RFC Physical - Light . . . Condition does

not justify evaluation . . . .".  Rec. Doc. 11-9, at 1-4.

Another document, entitled "Summary of Evidence," states, in

pertinent part:

> On August 8, 2011, MEDT concluded that Ms. Romano's
> medical data does not meet the factor of disability
> (Document 15).  Ms. Romano is not eligible for any
> Medicaid programs in the disabled category because she
> has not been determined disabled by the Social Security
> Administration or MEDT (Policy G-1610, Document 16).

---

[21] See Rec. Doc. 11-1, at 3 (No. 16:  "The only documents included that
purported to explain the reason are Exhibits E, F, G, & H.").

Rec. Doc. 11-10, at 2.  None of this information emanating from DHH indicates that DHH considered changes in Romano's symptoms, signs, and/or laboratory findings associated with her impairments.

Additionally, the ALJ's decision does not indicate any consideration of such evidence.  The ALJ found "relative improvement" based on Romano's 2011 medical records, and the ALJ based her decision largely on the fact that in 2011, the number of dates of service was half of what it had been in 2010.  Rec. Doc. 11-11, at 3.  The ALJ found "relative improvement and stable, well-managed conditions," but did not consider any changes in symptoms, signs, or lab findings.  Id. at 4.  DHH raises no factual issue as to whether it failed to consider evidence of changes in symptoms, signs, and/or laboratory findings associated with Romano's impairments in determining whether there was continuing disability, as required by 20 C.F.R. § 416.994(b)(1)(I).  Therefore, the Court holds that DHH deprived Romano of her right under 42 U.S.C. § 1396a(a)(8) to receive Medicaid benefits until properly found to be ineligible.

Based on the several instances of DHH's failure to use the federally mandated analysis for reaching a decision to terminate Medicaid benefits and DHH's exclusion of federally mandated

evidence, the Court holds that DHH improperly determined that Romano is no longer disabled. She is entitled to judgment in her favor.


## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the defendant Bruce D. Greenstein's motion to dismiss (Rec. Doc. 9) is **DENIED** and that the plaintiff Tiffany L. Romano's motion for summary judgment (Rec. Doc. 11) is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the Louisiana Department of Health and Hospitals is to reinstate Tiffany Romano's Medicaid benefits until it complies with federal law concerning the mandated decision-making process with respect to a decision regarding continuing disability, in the following particulars: (1) DHH must follow the seven-step sequential evaluation set out in 20 C.F.R. § 416.994; (2) DHH must consider all evidence in the file; and (3) DHH must consider evidence of changes in signs, symptoms, and/or laboratory findings associated with Romano's impairments in deciding whether or not there is medical improvement, and therefore, whether Romano has a continuing disability.

**IT IS FURTHER ORDERED** that Romano's claims for injunctive

relief concerning the fair hearing and notice procedures are dismissed without prejudice.[22]

New Orleans, Louisiana, this 15th day of May, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[22] Romano authorized dismissal of such claims based on the other relief granted by the Court. Rec. Doc. 11-2, at 21 ("If the Court orders Ms. Romano's reinstatement and the injunctive relief requiring compliance with the standards for terminating disability set out in 42 U.S.C. § 1382c(a)(4) and 20 C.F.R. § 416.994, then Ms. Romano authorizes the dismissal of her other claims for injunctive relief (concerning the fair hearing and notice procedures), provided the dismissal is without prejudice.").